56 F.3d 65
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Reamonia ABBOTT, John Abbott, Defendants-Appellants.
 Nos. 94-5665, 94-5666.
 United States Court of Appeals, Sixth Circuit.
 May 22, 1995.
 
 Before: KEITH, MARTIN, and GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claiming that the district court committed errors during trial and in sentencing them, Reamonia and John Abbott appeal their convictions under 26 U.S.C. Sec. 7201 for tax evasion. Because the Abbotts' claims are without merit, we AFFIRM the judgment of the district court.
 
 
 2
 On May 25, 1993, a federal grand jury returned a four count indictment charging Reamonia and John Abbott with tax evasion relating to joint returns they filed for the years 1985-1988. After the Abbotts took discovery from the United States they filed a Motion for a Bill of Particulars pursuant to Fed. R. Crim. P. 7(f). The district court denied the motion after hearing. On December 10, a jury returned a guilty verdict as to John Abbott on Counts 3 and 4 and as to Reamonia Abbott on Counts 2 and 3.
 
 
 3
 The Sentencing Reports for Reamonia and John Abbott were prepared by probation officer Barry Mitchell. Mitchell calculated the base offense level for each of the Abbotts under the United States Sentencing Commission, Guidelines Manual, Sec. 2T1.1(a)(A) (Nov. 1988). In doing so, he calculated the total amount of tax evaded, including interest, to be $102,624. The district court held a sentencing hearing on April 29, 1994, and afterward found that the amount of the tax loss was within the $80,000 to $150,000 range. The court did not make a more precise finding as to the amount of the tax loss. The court entered judgment on May 4, 1994, sentencing John Abbott to one year, three months imprisonment plus supervised release. The court enhanced Reamonia Abbott's sentence for obstruction of justice and sentenced her to one year, six months imprisonment plus supervised release. The Abbotts' sentences were within the applicable guideline ranges. The Abbotts now timely appeal their convictions and sentences on four grounds.
 
 
 4
 I. Denial of the Abbotts' Motion for a Bill of Particulars
 
 
 5
 The Abbotts argue that the district court abused its discretion by denying their request for a bill of particulars. We will only disturb a district court's denial of a motion for a bill of particulars if the court abused its discretion. We have said that proof of abuse of discretion requires a showing of actual surprise at trial or prejudice to the defendant's substantial rights by denial. United States v. Rey, 923 F.2d 1217, 1222 (6th Cir. 1991); United States v. Paiva, 892 F.2d 148, 154 (1st Cir. 1989). Because the Abbotts did not suffer any surprise or actual prejudice to any substantial rights, we will not disturb the decision of the district court. The indictment apprised the Abbotts that they were accused of knowing that they had received income substantially in excess of what they reported and of evading their tax liability in violation of 26 U.S.C. Sec. 7201 for the years 1985-1988. United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993) (the existence of a detailed indictment is one factor in determining whether to grant a motion for a bill of particulars). After discovery, the Abbotts knew the United States would claim that their unreported income came from Stuller Settings. The only evidence of unreported income presented at trial was that from Stuller Settings. The Abbotts defended the tax evasion charges by arguing that claimed and unclaimed expenses reduced their tax liability. The Abbotts, therefore, could not be surprised by having to provide expenses they had already claimed and certainly could not be surprised by having to prove previously unclaimed expenses. Finally, the Abbotts assert that the trial court denied their motion because it did not understand that the existence of a tax deficiency is an element of tax evasion under Section 7201. Although the trial court misspoke once on this point, the court was immediately corrected. We do not believe the district court denied the motion because she thought the United States would not have to prove, and therefore that the Abbotts would not have to defend, the existence of and the amount of a tax deficiency.
 
 
 6
 II. Evidentiary Ruling Limiting Cross-Examination
 
 
 7
 The Abbotts claim that the court erred in making evidentiary rulings regarding cross-examination testimony. However, as we said in United States v. Blakeney, a trial judge is given wide latitude to reasonably limit cross-examination of a witness based on concerns including harassment, prejudice, confusion of the issues, repetitive questioning, and relevancy. 942 F.2d 1001, 1002 (6th Cir. 1991), cert. denied, 502 U.S. 1035 (1992) (citing Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). The Abbotts argue that the court improperly limited their cross-examination of Special Agent Wilson's testimony as to: 1) the Sec. 1244 stock loss, 2) the 1985 rental income and expense claims, 3) the 1986 employee business expenses, and 4) the 1987 employee business expenses. The Abbotts believe that the court made rulings unfavorable to them regarding Wilson's testimony because it was under the misconception that proof of a tax deficiency is not an element of tax evasion under 26 U.S.C. Sec. 7201. Again, we do not think this is the reason that the court limited cross-examination. Our review of the transcript of Wilson's testimony leads us to conclude that the district court properly excluded hearsay, matters beyond the scope of direct, and repetitive questioning. Therefore, the court did not abuse its discretion in limiting the cross-examination of Wilson.
 
 
 8
 III. Whether USSG Sec.2T1.1(a)(A) is Unconstitutional
 
 
 9
 The Abbotts claim that USSG Sec.2T1.1(a)(A), which provides that "tax loss" shall include interest to the date of filing an indictment or information, is arbitrary and irrational and therefore violates their Fifth Amendment due process rights and Fourteenth[1] Amendment equal protection rights. The Abbotts claim that the United States can increase their sentence "at will" by deciding when to bring the indictment. The United States argues that the interest calculation is based on the amount of tax liability the Abbotts evaded, and therefore the tax loss is within the Abbotts' control. Further, the United States argues that the Abbotts could have paid their deficiency and stopped interest from accruing.
 
 
 10
 The Abbotts have not specified what fundamental right is implicated and are not claiming that Section 2T1.1 violates the Eighth Amendment. Neither have they indicated what "suspect" class they belong to for purposes of heightened constitutional scrutiny. As to the equal protection claim, the class of "persons convicted of tax evasion" is not a suspect class and persons convicted of tax evasion do not have a fundamental right not to have their sentence calculated based, in part, on the amount of interest accured on their tax deficiency. Therefore, we review the constitutionality of Section 2T1.1(a)(A) under the rational basis test. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440 (1985) (stating that the rational relationship test is used for social and economic legislation). Section 2T1.1 is rationally related to Congress's legitimate interest in penalizing persons convicted under 26 U.S.C. Sec. 7201 according to the amount of tax loss to the United States, part of which is represented by interest accrued.
 
 
 11
 Because the Abbotts believe Section 2T1.1 is "arbitrary and irrational," we assume they mean that Congress has violated their substantive due process rights. Braley v. City of Pontiac, 906 F.2d 220, 224-25 (6th Cir. 1990) (stating that substantive due process violation can be a deprivation of a constitutional guarantee or can occur by actions of government officials that "shock the conscience"). In United States v. Atisha, we said that pre-indictment delay by the government that prejudices the defendant may be a due process violation if the government delays for impermissible reasons, such as to gain a tactical advantage over the defendant. 804 F.2d 920, 928-29 (6th Cir. 1986), cert. denied, 479 U.S. 1067 (1987). Here, the Abbotts do not assert that the United States impermissibly delayed pursuing an indictment. They argue only that, because the date for filing an indictment is partially in the control of the United States, their Fifth Amendment right to due process has been violated. Many factors, however, affect the timing of an indictment, including whether persons being investigated attempt to evade law enforcement efforts. The facts of this case simply do not support a substantive due process violation.
 
 
 12
 IV. Erroneous Factual Findings of "Tax Loss" at Sentencing
 
 
 13
 We review the factual findings supporting the district court's application of a sentencing guideline provision for clear error. 18 U.S.C. Sec. 3742(e) (West Supp. 1995); United States v. Pierce, 17 F.3d 146, 151 (6th Cir. 1994). Essentially, the Abbotts argue that it was clear error for the district court not to take into consideration evidence tending to show that some of their previously unclaimed deductions and expenses were valid. The district court considered the Abbotts' evidence of additional expenses presented at the sentencing hearing and rejected their claims. Also, the Abbotts' own tax loss calculation of $86,908.95[2] agrees with the court's conclusion that the tax loss is in the $80,000 to $150,000 range. We do not think that the district court clearly erred in finding the tax loss fell in the $80,000 to $150,000 range because a preponderance of the evidence presented, including the calculations of Special Agent Wilson, supports such a finding.
 
 
 14
 Not finding any of the Abbotts' claims on appeal to be meritorious, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 We take the Abbotts to mean the Fifth Amendment. The Supreme Court has interpreted the due process clause of the Fifth Amendment to test federal classifications by the standards applicable under the equal protection clause of the Fourteenth Amendment. Bolling v. Sharpe, 347 U.S. 497, 499 (1954)
 
 
 [2]
 $47,859.84 tax deficiency plus $39,049.11 interest. J.A. at 140